(33 Misc. Rep. 572.)

### MUTUAL RESERVE FUND LIFE ASS'N. v. PATTERSON.

(Supreme Court, Special Term, New York County.  January, 1901.)

1. LIBEL AND SLANDER—DISCOVERY—INSPECTION OF PLAINTIFF'S BOOKS.
    Where, in an action for libel, the defendant admitted the publication of the libel, and, in his answer, alleged in detail the facts relied on to justify such publication, and further alleged that such facts and circumstances were known and believed by him to be true prior to the publication of said articles, the court will not grant an order requiring the plaintiff to produce its books and papers that defendant may obtain a defense to the action, since defendant should not have made the publication of the charges without sufficient proof of the same.

2. SAME—LACHES.
    Where, in an action for libel, the defendant did not make an application for an order to inspect the books and papers of the plaintiff until after the case had been placed on the preferred calendar, and reached for trial, such application will not be granted, as defendant was guilty of laches.

Action by the Mutual Reserve Fund Life Association against John Thomson Patterson (whose first name, being unknown to plaintiff, is designated by the fictitious name of John) for libel.  Motion by defendant for an order directing plaintiff to produce its books and papers.  Motion denied.

James, Schell & Elkus (Edward C. James and Abraham I. Elkus, of counsel), for plaintiff.
Baldwin & White, for defendant.

BLANCHARD, J.    This is a motion by the defendant for an order directing the plaintiff to produce, discover, etc., its books and papers. The application is based on the provisions of sections 803 to 809 of the Code of Civil Procedure, and rules 14, 15, and 16 of the general rules of practice (33 N. E. vii., viii.).  I have read with much care the very voluminous papers and documents presented on this motion, and a few material facts may be profitably recalled.  The plaintiff is a life insurance association, operating on the co-operative or assessment plan, having its headquarters in the city of New York, and the holders of its policies, numbering many thousands, are scattered all over the United States and many foreign countries.  The defendant is or was one of its policy holders, and was for some years employed by it in one capacity or another.  Such employment was terminated— whether by dismissal or resignation is not important—about two years ago, and ever since that occurrence, sometimes alone and at

other times in connection with other former and dissatisfied employés of the association, he has manifested the most bitter hostility to the association, questioning its solvency, and charging its management with inefficiency, dishonesty, and fraud. Early in February, 1900, as the proprietor of The Counsellor, a magazine, he devoted 35 of its 42 pages to an attack upon the plaintiff and its officers. This is the alleged libelous article upon which this action is based. An impartial mind cannot study the papers before me and not believe that the defendant has been inspired by improper motives in his attacks upon the plaintiff and its officers. His claim of worthy purpose is negatived by his acts and his presumptive knowledge of their evil consequences. His connection with the plaintiff has made him familiar with its plan of organization and methods of business. He knows that the officers of the association hold their positions by virtue of the votes of the members of the association, and that their tenure of office is dependent upon the will of the members, as they have the right, under the by-laws, to change the officers annually. He knows that the insurance department of the state completed an exhaustive examination of the affairs of the association more than a year ago, upon charges made by himself and associates, and that the charges then made against the association and its officers were thoroughly investigated, and that the superintendent of insurance in his report stated, "The result of the examination shows that the association is solvent." He knows that the chief examiner of the insurance department of the state stated, under oath, last April, that upon a most thorough examination of all the books and records of the association, working with twelve assistants for a period of three months from May 15 to August 15, 1899, he "found nothing which impaired the integrity or honesty either of Frederick A. Burnham, the president of said association, or of any one else associated with him in the management of the association at the time of such examination." He knows the nature of its business and the scope of its activity and operations, and that the prosperity, perpetuity, and even the life of the plaintiff are dependent upon public confidence; that a loss of public confidence would cause a loss of new business, and that a loss of new business would destroy the association, and bring loss and misery to tens of thousands of policy holders and their families and dependents. It would be a new departure for a court of justice to assist in such unmeritorious and destructive work. It is the policy of the law to help build up and to conserve business interests, and its mandate may never be used to tear down and ruin them. Moreover, I am convinced that the defendant has no definite knowledge of the contents of the books and papers of which he seeks a discovery and inspection, nor of the particular items or matter in any book or paper of which he desires an inspection. He practically asks the court to cast a dragnet over the whole documentary department of the plaintiff association, to the end that he may fish among the resulting contents in the hope of finding something therein which may be of use to him on the trial of this action. In the light of authority, this cannot be done. Brownell v. Bank, 20 Hun, 517; Dickie v. Austin, 4 Civ.

Proc. 123; McInnes v. Gardiner, 27 Misc. Rep. 124, 57 N. Y. Supp. 356; Walsh v. Press Co., 48 App. Div. 333, 62 N. Y. Supp. 833. The defendant, by his answer, admits the publication of the libelous matter, and alleges that the statements constituting the libel were true, and on that ground seeks to justify his conduct in publishing them. He sets forth, at great length and in detail, in his answer, the facts upon which he relies to justify the publication of the libelous matter, and alleges that "all the facts and circumstances set forth in the answer were known to the defendant, and believed by him to be true, prior to the publication of said libelous articles." If that be so, the defendant should have had in his possession, at the time of the publication, such legal evidence of the truth of said facts and circumstances as would be sufficient and competent to justify the publication of the libelous matter. It appears, however, from the defendant's petition on this motion, that he had not, at the time of the publication, and has not now, any personal knowledge of the facts which were set forth in the libelous articles, and that the same were based upon charges made in various newspapers, and upon information obtained from various persons. It is, therefore, apparent that the defendant seeks the examination merely to ascertain whether or not he has a defense. The court should not aid him in such an investigation; and, if he now finds himself in an awkward predicament because of the publication of said articles without sufficient proof of the charges made therein, he must bear the consequences of his imprudent and ill-advised conduct. He should have made his investigation for the proper proof of the truth of the statements made in the libelous articles before he assumed the responsibility of publishing them, and not have postponed it to this date, when the issues are ready for trial. Strakosch v. Publishing Co., 53 Hun, 503, 6 N. Y. Supp. 246; Miller v. Brooks (Sup.) 20 N. Y. Supp. 359. The nature of the action is such that the facts concerning which the defendant now seeks information should be known to him, and, if we are to give to the defendant the benefit of all the inferences created by his defense and justification as to the truth of the libelous statements, he should be able to prove those facts now by the evidence which was within his reach when he deemed it his duty to publish such statements. Jenkins v. Putnam, 106 N. Y. 276, 12 N. E. 613. I am also convinced that the defendant has been guilty of inexcusable laches in making the application. Issue was joined on May 5, 1900, and no adequate reason appears to explain why the application was not made before the action was placed on the preferred calendar and reached for trial. The order for the discovery and inspection is hereby vacated, with costs.

Order vacated, with costs.